UNION SWITCH & SIGNAL CO. et al. v. PHILADELPHIA & R. R. CO. et al.

(Circuit Court of Appeals, Third Circuit.    September 13, 1899.)

42, September Term, 1898.

1. PATENTS—INFRINGEMENT—RAILROAD BLOCK SIGNALING.

The Gassett patents, Nos. 233,746 and 246,492, for electric railway signaling apparatus, which cover improvements on the preceding Robinson system (No. 130,661; reissue 5,938), consisting in the exhibition of a danger signal at the entrance of a track section until the train has passed over, not only such section, but also a determinate part of the section next in advance, are not entitled to the broad construction accorded to pioneer inventions, but must be limited to the specific purpose sought to be accomplished, which is merely to continue the signal at "Danger," as a stop signal, until the train has passed a determinate distance beyond the section; and they are not infringed by a device in which two danger signals are set at the beginning of each section, and one of which continues at "Danger," as a distant cautionary signal, during the passage of the train over the entire section in advance.

2. SAME—VALIDITY—PRIOR USE.

The Westinghouse patent, No. 270,867, for improvements in electric circuits for railway signaling, is void, because it was in public and practical use for more than two years before the patent was applied for, and because a complete description of it was previously published in the Railroad Gazette, a trade paper having a general circulation among railroad people and those connected with railroads.

3. SAME—INFRINGEMENT—CONNECTORS FOR ELECTRIC TRACK CIRCUITS.

The Gassett and Fisher patent, No. 227,102, for an improved connector for electric track circuits, consisting of a wire having its ends coiled around and soldered to the outer ends of studs which are driven into holes drilled in the rails to be connected, is limited to the precise construction shown, and is not infringed by a connecting device in which the wire is not wound around or soldered to the studs.

4. SAME—MEANS PATENT.

The Means patent, No. 273,377, for a connector for electric track circuits, construed, and *held* not infringed by a device by which the connection is established directly between the rails and the connecting wire, instead of through the plugs used to fasten the wire, as shown in the patent.

Appeal from Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion of the circuit court, see 87 Fed. 906.

George H. Christy, for appellants.

W. H. Kenyon and R. N. Kenyon, for appellees.

Before SHIRAS, Circuit Justice, and BUTLER and KIRKPAT-RICK, District Judges.

KIRKPATRICK, District Judge.    The bill in the case charges the defendants with infringement of certain claims in patents No. 233,746, dated October 26, 1880, to Oscar Gassett; No. 246,492, dated August 30, 1891, to Oscar Gassett; No. 270,867, dated January 16, 1883, to George Westinghouse, Jr.; No. 227,102, dated May 4, 1880, to Oscar Gassett and Israel Fisher; No. 273,377, dated March 6, 1883, to Charles I. Means.    They relate to the automatic operation of electric signals, tending to prevent rear-end collisions of railway trains, and the means by which said signals are made operative and effective.    They will be considered in the order named.    It will be observed by an examination of the record and the reading of the specifications of the complainant's patents No. 233,746 and No. 246,-492 that they are not in any sense pioneers in the art.    Long before October, 1880, which is the date of the granting of patent No. 233,746, William Robinson obtained in the United States patent No. 130,661, dated August 20, 1872, the object of which was to operate electric signals by means of moving trains, using the rails of the track as conductors of the electric current.    He divided the track into sections insulated at the ends, and created a circuit normally closed which held the "Danger" signal at "Safety."    When the train entered upon the section, the electric current short-circuited through the wheels and axles of the cars, and thereby demagnetized the electromagnet which held the signal at "Safety," and caused it to be changed to "Danger."    The specification of this patent also set out the means by which "any desired number of signals could be operated at different points from a single section of track."    Robinson, in his British patent, dated August 29, 1879, also says:    "One or more lines of wire may also be used to operate additional signals; for instance, to indicate * * * when the block signal has changed."    An examination of the record discloses the fact that prior to the granting of the complainant's patents there were also other electrical devices, operated by a moving train, for the prevention of rear-end collisions, and that "Home" and "Distant" signals were in common use,—the former to warn against imminent danger; the latter placed further in the rear, to give notice that danger might be looked for at the next station.    With this state of the art, Gassett, the inventor of complainant's device, in the specification of patent No. 233,746, says:

"It has been found in practice that it is frequently desirable and necessary to continue a given danger signal in action after the train which has set it in action has passed over the next section in advance of a certain part thereof, by which means an additional security is provided, especially upon dangerous portions of the road, such as sharp curves, or descending grades."

The claims of this patent which it is charged are infringed relate to the means by which this result is accomplished.    They are as follows:

Claim 3: "The combination, substantially as hereinbefore set forth, of a railway track divided into two or more signal sections; a signaling apparatus actuated or controlled by an electric magnet, and placed at the entrance of each one of said signal sections; a circuit closer, controlled by a moving train, which acts to exhibit a danger signal by diverting the actuating current from the electro-magnet during the time occupied by the train in traversing the section guarded by said signal; and a circuit breaker, controlled by the moving train, which acts to continue the exhibition of said danger signal by interrupting the current through its electro-magnet during the time occupied by the train in traversing a determinate portion of the next succeeding signal section."  Claim 4: "The combination, substantially as hereinbefore set forth, of a series of two or more normally closed railway signaling circuits and a series of circuit breakers, one for each circuit, each of which circuit breakers is actuated or controlled by an electro-magnet included in the next circuit of the series."

No new result is claimed to have been obtained in patent No. 246,492, but the invention relates to "an improved organization or circuit and apparatus whereby the same result may be obtained in a more reliable and efficient manner." The claim of this patent which it is charged is infringed is the third, viz.:

"The combination, substantially as hereinbefore set forth, of a secondary circuit for actuating an electro-magnet controlling the movements of a signal, two wide pendent circuit breakers placed in said secondary circuit, and two independent primary signaling circuits respectively controlling the action of the said circuit breakers, which primary circuits are themselves actuated successively by a train while traversing the signal section protected by said signal."

The expressed object of both inventions was to supplement an old device, and one well known to the art. It will be seen that the division of the track into insulated signal sections having a normally closed circuit holding the signal at "Safety," together with the breaking of this circuit by the passing of the electric current through the wheels and axles of the moving train, and thereby placing the signal at "Danger," was but the Robinson device hereinbefore referred to; while the means employed for the continuation of the exhibition of the danger signal during the time occupied by the train in traversing a determinate portion of the next succeeding signal section alone had the semblance of novelty. This continuation of the danger signal had been preshadowed by Robinson, and the principle of overlapping signals clearly set out and provided for in the patent to Henry Flad, No. 162,369, dated April 20, 1876. In no sense can it be said that Gassett was a pioneer in the art. He should be limited not only to the specific purpose which he desired to accomplish, but to the specific means which he employed.

An examination of the defendant's device shows: That he has embodied the Robinson principle, which was free to the world. In the same way he has divided the track into primary circuits, which, like Robinson's and Gassett's systems, are normally closed. To this he has added for each track section a secondary signal-controlling circuit containing the "Home" and "Distant" signals. These secondary circuits, unlike Gassett's secondary circuits, are normally open, and, when so open, cause the signal to indicate "Danger." When the train enters upon a section, the wheels and axles of the cars, by

short-circuiting the electric current in the primary circuit of that section, actuate two signals at the entrance of that section; one signal—the "Home" signal—indicating that the section is occupied, and the other—the "Distant" signal—being then merely additional thereto. As the train passes off the section, the "Home" signal is set free, but the "Distant" signal remains, to indicate to an approaching train that, while the immediately preceding section is clear, the one in advance of that is not, and therefore that caution must be exercised in observing the Home signal at the next station. The systems of the complainant and defendant differ, therefore, in purpose. The complainant sets a danger signal at the entrance of the section, and keeps it set until the train has not only passed over that section, but a determinate portion of the preceding section. It stops the following train at the entrance of the section, although the preceding train has passed entirely over it. The defendant's system permits the following train to pass upon a section so soon as the preceding train has left it, but sets a cautionary signal, bidding the engineer exercise great care in proceeding, because a train is then occupying the immediately preceding section. The purpose of the complainant's system is to stop the train, and of the defendant's to suffer it to proceed with caution. These systems also differ in the specific means employed to primarily cause, and then to continue, the exhibition of the signals after the train has left the section. Both complainant's and defendant's operate upon the Robinson principle, though the defendant does not use the specific means described in the complainant's combination. The secondary signaling circuit of the defendant's is open when there is no train on the track, while that of the complainant's is closed under the same condition. The defendant does not divide any signaling section into two subsections, as does the complainant, but has the circuit of each section entirely independent of all others. The complainant's device is provided with two independent circuit breakers in the branching secondary circuit for actuating an electro-magnet controlling the movement of the signal. These are wanting in the defendant's structure. We are of the opinion that the defendant's device in no way infringes upon the claims of the Gassett patents, as charged

It is also alleged in the bill that the defendant's device infringes upon claim 4 of patent No. 270,867, dated January, 1883, granted to George Westinghouse, Jr. The record clearly shows that the Westinghouse device was anticipated not only by a prior publication which appeared in a periodical known as the Railroad Gazette, dated March 12, 1880, and April 2, 1880, but also by the structure set up for use on the Chicago, Burlington & Quincy Railroad. It appears by the evidence that this use of the device upon the Chicago, Burlington & Quincy Railroad extended over a period of upwards of two years; that it was not merely experimental, but public and practical. It was at that time a perfected invention, set up for the purpose of sale, subject to approval, and was intended to be used as a means to promote its sale to other corporations. We are of opinion that the patent No. 270,867 is void for want of novelty.

The bill also charges infringement of claim 1 in patent No. 227,-102, which is as follows:

"The combination, with a rail bored to receive it, of a wire provided at its ends with a connected driving stud to be driven into the said rail to form a continuous metallic conductor therewith for an electric current, substantially as described."

A reference to the specification shows that the invention consists in punching or drilling holes in the flanges of adjacent rails, and driving into these holes the ends of a wire connector long enough to reach them and span the rail joint, the conductor being provided at its ends with tapering driving studs a trifle larger than the holes, so that when forcibly driven in the holes they form a perfect contact. "The ends of the wire connectors are coiled around the driving stud just under their heads, and the whole end then dipped in molten solder or other suitable material." Certainly it required no invention to electrically connect disjointed rails with a wire conductor, and hold this wire in place by clamping it against the rails by means of a driven stud or bolt. Something more was needed to give patentable novelty. This was obtained by coiling the wire around the head of the driving stud, and securing it by molten solder. To this precise construction we think the complainant must be limited. The wire of the defendant's device is not wound around the stud; not soldered thereto. It does not, therefore, infringe.

The last claim and patent on which infringement is charged is claim and patent No. 273,377, viz.:

"The combination, with the conducting wire, U, of the split plug, X, and railroad track, Q, substantially as and for the purposes set forth."

It will be observed that this claim is very narrowly drawn. The specification calls for a split plug adapted to obtain spring action, so that, when the wire is inserted in the hole in the center, and the plug driven into the rail, electrical connection will be established between the wire and the rails through the plug. The electrical connection is between the wire and the plug that clamps it. In defendant's device the plug is used merely as a clamp or wedge to press the wire against the rail, and does not form a part of the electric circuit. It has none of the essentials of complainant's plug, and cannot be said to infringe the claim of this patent. The decree of the circuit court will be affirmed.